# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

MARK DRUIVENGA, d/b/a
CONTRACT WELDING &
MECHANICAL,

          Plaintiff,

vs.

THE HILLSHIRE BRANDS CO.,

          Defendant.

No. C 18-4003-MWB

**OPINION AND ORDER
REGARDING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT**

_____

## TABLE OF CONTENTS

I.     **INTRODUCTION** ................................................................. 2
    A.    *Factual Background* ................................................... 2
    B.    *Procedural Background* ............................................ 5

II.    **LEGAL ANALYSIS** ...................................................... 7
    A.    *Standards For Summary Judgment* ........................... 8
    B.    *Breach Of The Contract* ............................................ 9
        1.    *Arguments of the parties* .................................. 9
        2.    *Analysis* ........................................................... 11
    C.    *Damages* ................................................................. 16
        1.    *Arguments of the parties* ................................ 16
        2.    *Analysis* ........................................................... 18

III.    *CONCLUSION* ............................................................ 21

Has an independent welding contractor brought a viable breach of contract claim against the owner of a turkey processing plant based on the termination of his services following a fire at the plant? The plant owner thinks not and has moved for summary judgment on the contractor's breach of contract claim. More specifically, the plant owner argues that the contractor has not alleged any breach of a contract term and that damages for loss of the contractor's business allegedly resulting from the breach are not available where the parties' contract could be terminated at any time. The contractor contends that a reasonable jury could find in his favor on his breach of contract claim, however, based on breach of the implied covenant of good faith and fair dealing, and that his claimed damages for loss of his business are the foreseeable and consequential result of the plant owner's breach.

## I.    INTRODUCTION

### A.    *Factual Background*

This statement of the factual background does not necessarily set out all the parties' statements of facts in support of their respective positions, although it does set out sufficient facts to put in context the parties' arguments. It also does not set out the stated facts in precisely the same way the parties stated them, because I have exercised some editorial license in the language and organization of the parties' factual statements, while adhering to the essence of those factual statements. Also, I have drawn on the pleadings

and the parties' briefs for additional facts, if supported by the record, where I deemed appropriate to provide the necessary context for the parties' arguments.[1]

In March 2014, plaintiff Mark Druivenga, doing business as Contract Welding & Mechanical, was retained by The Hillshire Brands Company, the defendant in this action, to perform welding work inside Hillshire's turkey processing plant in Storm Lake, Iowa. The parties agree that Druivenga was not an employee of Hillshire; rather he was an independent contractor. Druivenga asserts, in turn, that he did not have employees, but subcontractors, who performed work for him.

Druivenga testified in depositions that he had no written contract with Hillshire. Somewhat more specifically, he testified that the terms of the contract were that "[t]hey hired me to come in and do welding work. That's the contract we had." Defendant's Appendix, 3 (Druivenga Deposition, 121:20-21. Druivenga's deposition included the following exchange, as well:

> Q.     Okay.   So—and correct me if I'm wrong—they'd tell you:  Do this job.  You'd do it.  You'd send them an invoice.  They'd pay you.  That was the extent of it.
>
> A.     Yes.
>
> Q.     Okay, and were there any terms agreed to about the duration of this contract or of your arrangement?
>
> A.     They had work.  They needed welders.  We provided that work.

---

[1] The plaintiff only belatedly responded to the defendant's statement of material facts in the manner required by N.D. IA. L.R. 56. This is, by no means, the only failure by the plaintiff to follow the applicable local rules. However, the defendant did not ask me to treat its statement of material facts as undisputed, based on the plaintiff's lapse, and I have not done so.

Defendant's Appendix at 3 (Druivenga Deposition at 121:22-122:6). Druivenga does not allege that Hillshire failed to pay him for any work completed.

On March 22, 2014, a fire broke out at the plant, after Druivenga's employees or subcontractors performed welding work in the "dark meat room."

That is as far as the parties' formal statements of facts in support of and resistance to summary judgment take us.[2] The parties' briefing—and particularly Druivenga's briefing—demonstrates that considerably more facts are or may be relevant to the disposition of the motion for summary judgment now before me.

Specifically, Druivenga asserts that he founded Contract Welding in 2010 to provide welding services at Hillshire's turkey processing plant. Druivenga asserts, and it does not appear that Hillshire disputes, that his business was physically based at Hillshire's plant and that roughly 98% of his business was at the plant. Plaintiff's Appendix, Ex. 1 (Druivenga Deposition, 20:2-7).

Druivenga alleges that, prior to the fire in March 2014, Hillshire asked Contract Welding to patch a series of small holes in the east wall of its dark meat room and that Hillshire issued a "hot work permit" for this job. See Plaintiff's Appendix, Ex. 2 (Hot Work Permit No. 04132, dated March 22, 2014). Druivenga contends that Hillshire had designated Eric Mohror as its permit authorizing individual to be on duty during the events at issue in this case. See Plaintiff's Appendix, Ex. 6 (Mohror Deposition, 33:1-9). On that date, Mohror filled out, signed, and issued Hot Work Permit No. 04132, affirming that Druivenga's welders could safely patch the wall in Hillshire's dark meat room. See Plaintiff's Appendix, Ex. 2. In particular, Mohror marked the following items as "NA" in the section concerning "Work on Walls or Ceilings": "Verify that

---

[2] A substantial number of the parties' purported factual allegations relate to procedural matters or legal conclusions, rather than factual matters.

Defendant's Appendix at 3 (Druivenga Deposition at 121:22-122:6). Druivenga does not allege that Hillshire failed to pay him for any work completed.

On March 22, 2014, a fire broke out at the plant, after Druivenga's employees or subcontractors performed welding work in the "dark meat room."

That is as far as the parties' formal statements of facts in support of and resistance to summary judgment take us.[2] The parties' briefing—and particularly Druivenga's briefing—demonstrates that considerably more facts are or may be relevant to the disposition of the motion for summary judgment now before me.

Specifically, Druivenga asserts that he founded Contract Welding in 2010 to provide welding services at Hillshire's turkey processing plant. Druivenga asserts, and it does not appear that Hillshire disputes, that his business was physically based at Hillshire's plant and that roughly 98% of his business was at the plant. Plaintiff's Appendix, Ex. 1 (Druivenga Deposition, 20:2-7).

Druivenga alleges that, prior to the fire in March 2014, Hillshire asked Contract Welding to patch a series of small holes in the east wall of its dark meat room and that Hillshire issued a "hot work permit" for this job. See Plaintiff's Appendix, Ex. 2 (Hot Work Permit No. 04132, dated March 22, 2014). Druivenga contends that Hillshire had designated Eric Mohror as its permit authorizing individual to be on duty during the events at issue in this case. See Plaintiff's Appendix, Ex. 6 (Mohror Deposition, 33:1-9). On that date, Mohror filled out, signed, and issued Hot Work Permit No. 04132, affirming that Druivenga's welders could safely patch the wall in Hillshire's dark meat room. See Plaintiff's Appendix, Ex. 2. In particular, Mohror marked the following items as "NA" in the section concerning "Work on Walls or Ceilings": "Verify that

---

[2] A substantial number of the parties' purported factual allegations relate to procedural matters or legal conclusions, rather than factual matters.

4

construction is noncombustible and without combustible covering or insulation," and "Combustibles on other side of walls moved or protected." Mohror also admitted that he did not indicate that the work was being done in a wall or ceiling, which would have required a fire watch. Plaintiff's Appendix, Ex. 6 (Mohror Deposition, 54:24-55:15). Druivenga contends that Mohror made the representations on the Hot Work Permit, despite the knowledge of Hillshire's employees that there were flammable materials within the dark meat room wall and that the wall could catch fire during welding operations. *See* Plaintiff's Appendix, Ex. 7 (Frasier Deposition, 25:10-28:22; 29:25-30:23).

Two of Druivenga's welders, Matt Johnson and Jamie Ballard, performed the welding work on the wall. Plaintiff's Appendix, Ex. 8 (Johnson Deposition, 25:13-23). Druivenga asserts that, as Johnson and Ballard performed this work, heat from the welding operations caused the combustible materials inside the wall to ignite, which resulted in the fire at issue in this lawsuit.

According to Druivenga, following the fire, Hillshire terminated the services of Contract Welding, and informed him that he could never work at its plant again. Plaintiff's Appendix, Ex. 1 (Druivenga Deposition at 128:22-129:16). Also, on December 30, 2015, a group of insurance companies brought suit against Contract Welding in the Iowa District Court for Buena Vista County, as subrogees of Hillshire. Druivenga alleges that lawsuit meant that he was no longer able to operate Contract Welding, because he could not obtain insurance coverage.

### B.     *Procedural Background*

The rather convoluted procedural history of this case is set out in detail in my March 1, 2018, Opinion And Order Regarding Third-Party Plaintiff's Motion To Remand, *Druivenga v. Hillshire Brands Co.*, No. C 18-4003-MWB, 2018 WL 1115935,

at *1-*2 (N.D. Iowa Mar. 1, 2018). Suffice it to say that this lawsuit began as a third-party complaint by Druivenga in a lawsuit brought against him by insurers in state court, but this action was later removed to this court.

In the controlling pleading, Druivenga's October 25, 2017, Third-Party Petition And Jury Demand, Druivenga alleges that Hillshire breached its contractual duty to act in good faith and fair dealing, through the following specific acts and omissions:

    a.    Failure to properly train its outside contractors to perform welding work inside its plant.

    b.    Failure to have industry custom and standard policies, procedures, protocols, manuals, or recommendations in place in order for welding work to be safely performed inside its plant.

    c.    Failure to follow the requirements of its own hot work permit process, and improperly issuing a hot work permit on March 22, 2014, for hot work in the area where Hillshire believes the fire initially ignited.

    d.    Failing to identify the dangers of combustion prior to issuing the hot work permit.

    e.    Failing to supervise the welding work in a skillful, workmanlike, prudent, and non-negligent manner so as not to create a fire hazard.

    f.    Failing to complete an inspection following completion of the work performed for signs of combustion, fire, or danger in general.

    g.    Failing to comply with all applicable statutes, ordinances, codes, regulations, and industry standards.

    h.    Failing to take all necessary and reasonable precautions so as to prevent property damage to the building.

    i.    Failure of Hillshire to have a properly working and modern fire detection and fire suppression system inside the Hillshire plant.

       j.     Any other breaches of the parties' contractual relationship which may be determined through the process of discovery.

Third-Party Petition And Jury Demand, Count I – Breach Of Contract (Hillshire), ¶ 16. Druivenga seeks damages, costs, expenses, pre- and post-judgment interest, and any other relief this court deems just and proper. *Id.*, "Wherefore" clause.

      Hillshire removed Druivenga's breach of contract claim when it was the only claim left at issue in the state court proceedings, after the insurers settled their claims against Druivenga. Thus, Druivenga is effectively the plaintiff in this action, and Hillshire is effectively the defendant. In its Answer, filed in this court, Hillshire denies Druivenga's claim and asserts various affirmative defenses. Trial in this matter is set to begin on July 22, 2019.

      This case is now before me on Hillshire's May 16, 2018, Amended Motion For Summary Judgment. In its Motion, Hillshire contends that it did not breach its contract with Druivenga, including any duty to act in good faith and fair dealing, and that Druivenga cannot recover damages as a result of any alleged breach of contract. Druivenga filed a Resistance on June 1, 2018, and Hillshire file a Reply on June 8, 2018. On June 11, 2018, Druivenga belatedly filed a Response To Defendant's Statement Of Undisputed Material Facts.

      Although Hillshire requested oral arguments on its Amended Motion For Summary Judgment, I conclude that the parties' written submissions are sufficient, so that I will consider Hillshire's Motion fully submitted on the written arguments.

## II.    *LEGAL ANALYSIS*

      Hillshire has advanced two distinct grounds for summary judgment, which I will consider, in turn. First, however, I will summarize the standards for summary judgment.

### A.    Standards For Summary Judgment

Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact *and* that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, "[t]he movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex*, 477 U.S. at 323). In response, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

When the parties have met their burdens, the district judge's task is as follows:

> "On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.'" *Ricci v. DeStefano*, ––– U.S. ––––, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) quoting *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotations omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.

> Ct. 2505, 91 L. Ed. 2d 202 (1986). . . . .  "'Where the record
> taken as a whole could not lead a rational trier of fact to find
> for the nonmoving party, there is no genuine issue for trial.'"
> *Ricci*, 129 S. Ct. at 2677, quoting *Matsushita*, 475 U.S. at
> 587, 106 S. Ct. 1348.

*Torgerson*, 643 F.3d at 1042-43.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012).  However, summary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may not be subject to genuine dispute.  *See, e.g., Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

With these standards in mind, I turn to consideration of Hillshire's Amended Motion For Summary Judgment.

### B.      Breach Of The Contract

Hillshire's first ground for summary judgment is that Druivenga cannot generate any genuine issues of material fact on breach of any terms of the parties' contract. Druivenga responds that he marshalled evidence that Hillshire breached the covenant of good faith and fair dealing implied in every contract.

### 1.      Arguments of the parties

Hillshire argues that, based on Druivenga's own testimony, it is undisputed that the only terms of the parties' contract were that Druivenga would provide welding services as needed and that Hillshire would pay for those services as performed.  Hillshire argues that, because there is no allegation it ever failed to pay Druivenga for work he provided, there was no breach of the contract.  Hillshire recognizes that Druivenga alleges breach of contract based on allegations that Hillshire failed to take steps that would

ensure the work performed by Druivenga could be done safely without causing a fire, but Hillshire contends this is a classic negligence-based tort claim. Indeed, Hillshire argues that Druivenga's allegations that Hillshire caused the fire by failing to exercise due care in issuing a hot work permit to Druivenga's welders is premised on the breach of a duty of care, which is the hallmark of a negligence claim. Hillshire contends that Druivenga's characterization of his negligence claim as a breach of contract claim is an attempt to avoid the impact of the economic loss doctrine, where a tort claim ordinarily does not permit purely economic losses to be compensated, but all of Druivenga's alleged losses *are* economic.

Hillshire also recognizes that Druivenga alleges breach of the duty of good faith and fair dealing, implied in every contract, because he cannot rely on breach of any express contractual term. Hillshire argues that this gambit also fails, because the implied covenant of good faith and fair dealing does not give rise to new substantive terms that do not otherwise exist in the contract. Here, Hillshire argues that Druivenga's claim that Hillshire breached the contract by burning down its own facility seeks to inject into the contract substantive terms concerning how the contract was to be performed that do not exist in the contract. Hillshire points out that no terms of the parties' contract impose a duty upon Hillshire not to cause a fire negligently at its own plant.

Druivenga responds that, based on the facts in the record, a reasonable jury could find that Hillshire breached its contract, specifically, the implied covenant of good faith and fair dealing, by affirming that the wall of the dark meat room was safe and suitable for welding. He argues that Hillshire undertook a contractual duty to inform Contract Welding as to whether any particular part of the building was suitable for welding, which is consistent with industry standards. He contends that Hillshire not only failed to inform Contract Welding of the flammable materials behind the wall, it affirmatively stated that the wall was safe for welding.

Further, Druivenga argues that Hillshire's decision to issue a hot work permit was the immediate cause of the fire and that, by issuing the permit and affirming to Druivenga that the wall was safe and suitable for welding, Hillshire failed to act with the diligence that contracting parties have a right to expect from one another, which constitutes breach of the covenant of good faith and fair dealing. Indeed, Druivenga argues that, by telling his welders that the wall was safe for welding, Hillshire all but caused the fire that is the basis for this litigation.

In reply, Hillshire reiterates that Druivenga has not identified any term of the contract that Hillshire allegedly breached nor has he alleged that he was not paid for work he performed. Hillshire argues that Druivenga's claim sounds in negligence, because it is based on alleged failure to comply with safety standards, not in contract, based on breach of some unspecified contractual term. Hillshire reiterates that Druivenga's reliance on breach of the covenant of good faith and fair dealing is misplaced, because the covenant does not give rise to new substantive terms that did not otherwise exist in the contract, where Druivenga never addresses the terms of the contract. At most, Hillshire reiterates, Druivenga alleges a failure to exercise due diligence, or due care, in paragraph 16 of his Third-Party Petition, which is the hallmark of a negligence claim, but he did not plead any negligence claim.

### 2. *Analysis*

As the Iowa Supreme Court has explained,

> Generally, to establish a claim for a breach of contract, the [plaintiff] must show
>
>> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that it has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

11

> *Iowa Mortgage Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107,
> 110–11 (Iowa 2013) (quoting *Molo Oil Co. v. River City Ford
> Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)).
> Offering evidence of damages is required to demonstrate a
> claim for breach of contract. *Sutton v. Iowa Trenchless, L.C.*,
> 808 N.W.2d 744, 753 (Iowa Ct.App.2011).

*Iowa Arboretum, Inc. v. Iowa 4-H Found.*, 886 N.W.2d 695, 706 (Iowa 2016). "The first three elements address the existence of a contract. The last two elements address the breach of the contract and the damages caused by the breach." *Iowa Mortg. Ctr., L.L.C. v. Baccam*, 841 N.W.2d 107, 110–11 (Iowa 2013).

The second element requires that "the contract terms must be sufficiently definite for the court to determine the duty of each party and the conditions of performance." *Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010). As to the "breach" element, "'[a] party breaches a contract when, without legal excuse, it fails to perform any promise which forms a whole or a part of the contract.'" *Id.* (quoting *Molo Oil*, 578 N.W.2d at 224). "The determination of whether a party has breached a contract is ordinarily for the fact finder." *Shelby Cty. Cookers, L.L.C. v. Util. Consultants Int'l, Inc.*, 857 N.W.2d 186, 195 (Iowa 2014) (citing *Kern v. Palmer Coll. of Chiropractic*, 757 N.W.2d 651, 658 (Iowa 2008); *Iowa–Ill. Gas & Elec. Co. v. Black & Veatch*, 497 N.W.2d 821, 825 (Iowa 1993). However, where the claimant fails to demonstrate the breach of any terms of the contract, the court may decide breach of contract as a matter of law. *See Iowa Arboretum, Inc.*, 886 N.W.2d at 707 & n.7.

Conduct that does not literally violate an express term of a contract can still constitute a breach of contract "by implication for violating the obligation of good faith and fair dealing." *Alta Vista Properties, LLC v. Mauer Vision Ctr., PC*, 855 N.W.2d 722, 731 (Iowa 2014). The implied duty of good faith and fair dealing "inheres in all contracts and cannot be disclaimed through an integration clause or otherwise." *Id.* at

730 (citing *Fogel v. Teachers of Iowa Coll.*, 446 N.W.2d 451, 456 (Iowa 989)). More specifically,

> "'The underlying principle is that there is an implied covenant that neither party will do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Am. Tower, L.P. v. Local TV Iowa, L.L.C.*, 809 N.W.2d 546, 550 (Iowa Ct.App.2011) (quoting 13 Richard A. Lord, *Williston on Contracts* § 38.15, at 437 (4th ed.2000)).

*Alta Vista Properties*, 855 N.W.2d at 730.

The scope of the covenant is not unlimited:

> The implied covenant of good faith and fair dealing, however, "does not give rise to new substantive terms that do not otherwise exist in the contract." *Bagelmann v. First Nat'l Bank*, 823 N.W.2d 18, 34 (Iowa 2012) (internal quotation marks omitted). For example, in *Bagelmann*, we declined to find a breach of the implied good-faith-and-fair-dealing obligation when the mortgagee did not promptly provide the mortgagors with updated and more accurate flood zone information determinations. *Id.* at 22. The mortgage contained no promise the mortgagee would provide notification or otherwise guarantee the property's flood hazard status and so we determined "any allegation of bad faith here lacks a contract term to which it can be attached." *Id.* at 34.

*Alta Vista Properties*, 855 N.W.2d at 731. On the other hand, in *Alta Vista Properties*, the court concluded that "the implied right in the present case follows logically from certain express terms of the agreement—i.e., the landlord's right to sell or mortgage the property." *Id.* The court concluded,

> [T]he contract here contains an express term (the right to sell) to which the implied obligation (the right to show the property) can be attached. It would "destroy [ ] or injur[e] the right of [Alta Vista] to receive the fruits of the contract" if we were to decline to find an implied right to show the

premises to prospective buyers. *See Am. Tower*, 809 N.W.2d
at 550.

*Alta Vista Properties*, 855 N.W.2d at 731.

I agree with Hillshire that Druivenga has failed to point to any evidence from which a rational trier of fact could find in his favor on his breach of contract claim. *See Torgerson*, 643 F.3d at 1042-43. There is simply no evidence in the record from which a rational trier of fact could find that any particular term of the parties' contract imposed a duty on Hillshire that Hillshire breached in a particular way. *See Iowa Arboretum, Inc.*, 886 N.W.2d at 706 (second and fourth elements); *Royal Indem. Co.*, 786 N.W.2d at 846 (terms must be sufficiently definite for the court to determine a party's duty, and breach of contract is failure to perform any promise of the contract).

First, the only evidence of the terms of the parties' contract is that the parties agreed that Druivenga would be paid for welding work requested by Hillshire, but there is no evidence that Hillshire ever failed to pay Druivenga for welding work done by him or Contract Welding. Defendant's Appendix at 3 (Druivenga Deposition at 121:22-122:6). Nor is there any evidence that a term of the parties' contract required Hillshire to continue using Druivenga's or Contract Welding's services, no matter what; indeed, nothing in the terms of the contract required that Hillshire continue to use Druivenga's or Contract Welding's services for any time period or any jobs *at all*. *Id.* Finally, no express term of the parties' contract imposed any duty on Hillshire or indicated any promise by Hillshire to adhere to any standard—whether that standard arose from contract or "industry standards"—to ensure that any location where Druivenga was asked to weld would be certified to be free of, or would in fact be free of, flammable materials. *Id.* Although Druivenga repeatedly asserts that there was a contractual duty on Hillshire's part to ensure that welding could be done safely, he *never* identifies any particular term of the contract that states such a promise. *See Iowa Arboretum, Inc.*, 886 N.W.2d at

706; *Royal Indem. Co.*, 786 N.W.2d at 846. Indeed, Druivenga alleges breach of contract based on Hillshire's "failure" to fulfill various duties in paragraph 16 of his Third-Party Petition, but he never alleges what terms in the contract impose any of those duties.

Second, even though Druivenga is not required to prove literal violation of an express term of a contract, because the implied duty of good faith and fair dealing "inheres in all contracts and cannot be disclaimed through an integration clause or otherwise," *Alta Vista Properties*, 855 N.W.2d at 731, Druivenga's attempt to establish a breach of the implied covenant of good faith and fair dealing also fails as a matter of law. Specifically, there is simply no evidence of any express term of the parties' agreement to which an implied obligation of continued employment or an implied obligation for Hillshire to meet any standard or duty alleged in paragraph 16 of the Third-Party Petition could attach. *Compare Bagelmann*, 823 N.W.2d at 34 (finding such a promise in the terms of the contract and, therefore, a basis for breach of the implied covenant), *with Alta Vista Properties*, 855 N.W.2d at 731 (finding no such promise in the terms of the contract and, hence, no basis for breach of the implied covenant). In other words, Druivenga is simply trying to use the implied covenant of good faith and fair dealing to impose new substantive terms—set out in paragraph 16 of his Third-Party Petition—that do not otherwise exist in the contract. *Alta Vista Properties*, 855 N.W.2d at 731 (citing *Bagelmann*, 823 N.W.2d at 34). While I need not decide whether Druivenga has alleged breach of duties sounding in negligence, as Hillshire contends, it is clear that none of the duties that Druivenga alleges were breached can be found in or can be logically implied from an express term of the contract. *Id.*

Finally, because I have "reached th[e]s[e] conclusion[s] without considering extrinsic evidence," and there is no extrinsic evidence offered by Druivenga to support his interpretation of the parties' contract, I "can interpret the [contract] as a matter of

law." *Id.* at 732-33 (citing *Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435 (Iowa 2008) as holding that interpretation is a matter of law for the court when it does not depend on extrinsic evidence, and RESTATEMENT (SECOND) OF CONTRACTS § 212, at 125, as indicating that interpretation of an integrated agreement is a question of law unless it "depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence"). Furthermore, because Druivenga has failed to generate genuine issues of material fact that Hillshire breached any express term of the contract or the implied duty of good faith and fair dealing, I can decide that there was no breach as a matter of law. *Iowa Arboretum, Inc.*, 886 N.W.2d at 707 & n.7.

Hillshire is entitled to summary judgment on Druivenga's claim of breach of contract on the ground that there are no genuine issues of material fact to support breach of an express term or the implied covenant of good faith and fair dealing in the contract.

## C.    Damages

Notwithstanding that I have found no breach of the parties' contract as a matter of law, I will also consider, in the alternative, Hillshire's contention that damages for Druivenga's loss of his business would not be available, even if Druivenga proved a breach of contract. Druivenga asserts that his damages claim is proper.

### 1.    Arguments of the parties

Hillshire argues that, even if Druivenga could win on his breach of contract claim, Druivenga has no recoverable damages flowing from the alleged breach of contract. This is so, Hillshire contends, because Druivenga is seeking the welding revenue he would have received from work at Hillshire until he reaches the age of 75, with adjustments for inflation and other anticipated increases, but Druivenga had no contractual right to continue working at the Hillshire plant. Hillshire argues that Druivenga was an

independent contractor, who had even less rights than an at-will employee, and that he could be terminated for any reason, at any time, and without notice. Hillshire argues that Druivenga cannot recover damages because Hillshire exercised its right to terminate the parties' contract.

In response, Druivenga argues that Hillshire's premise that he was operating as an independent contractor with no contractual right to future work at Hillshire "misses the point," which he argues "is that the fire put Druivenga and Contract Welding completely out of business." He contends that, in general, contract damages are meant to put the injured contract party in the place he would have been in had the other party not breached their contract, so long as the damages were foreseeable as a probable result of the breach. He argues that a non-breaching party may recover lost profits in the form of lost future business so long as, again, such losses were foreseeable to the breaching party. Here, Druivenga argues, Hillshire had every reason to know that a fire of the kind that occurred would put Druivenga out of business, where Contract Welding existed for the sole purpose of performing the regular welding and maintenance work at Hillshire's Storm Lake plant, his company was, in fact, based at the plant, and his welders worked almost exclusively at the plant. He contends that a jury could reasonably determine that his company would have continued working for Hillshire, if the fire had not happened, because the subrogation suit by insurers, which kept him from obtaining insurance to continue operations, was a natural and foreseeable consequence of the fire. He asserts that reasonableness and foreseeability are classic jury questions. He also contends that the jury can determine his damages with a reasonable degree of certainty, based on his expert's calculations.

In reply, Hillshire reiterates that Druivenga's claimed damages are not recoverable. Hillshire argues that even if it was foreseeable that Druivenga would have continued working at the plant if the fire had not happened, that is irrelevant, because

Hillshire was entitled to terminate Druivenga, an independent contractor, at any time for any reason at all. Hillshire also argues that it is not responsible for the insurers' decision to sue Druivenga for damages because of Druivenga's conduct. Finally, Hillshire argues that Druivenga had no right to expect one day of future work at Hillshire, let alone work until he was 75 years old. Hillshire argues that Druivenga simply cannot recover damages based on future work to which he concedes he has no legal right.

### 2. *Analysis*

As mentioned, briefly, above, evidence of damages is required to demonstrate a claim for breach of contract, *see Iowa Arboretum, Inc.*, 886 N.W.2d at 706, and the last element of a breach of contract claim is damages caused by the breach. *Iowa Mortg. Ctr., L.L.C.*, 841 N.W.2d at 110–11. However, the plaintiff "must prove that the damages resulted from [the defendant's] breach and were in the contemplation of the parties." *Royal Indem. Co.*, 786 N.W.2d at 847 (citing *Kuehl v. Freeman Bros. Agency, Inc.*, 521 N.W.2d 714, 718 (Iowa 1994).

"The nature and terms of the contract necessarily dictate the damages recoverable." *Id.* Thus, the Iowa Supreme Court explained,

> In *Kuehl* we stated:
>
>> Distinct from the general rule for damages based on commitment of a tort, damages based on breach of a contract must have been foreseeable or have been contemplated by the parties when the parties entered into the agreement. Whether the damages were reasonably anticipated by the parties when the contract was formed may be discerned from "the language of the contract in the light of the facts, including the nature and purpose of the contract and circumstances attending its execution." Damages which a reasonable person would expect to follow from breach of a contract are direct and thus should be awarded.

> [*Kuehl*, 521 N.W.2d at 718] (citations omitted) (quoting 22
> Am. Jur. 2d Damages § 460, at 541 (1988)). We also require
> that the damages have some nexus with the breach, i.e., the
> damages recoverable for a breach of contract are limited to
> losses actually suffered by reason of the breach and must
> relate to the nature and purpose of the contract. *Midland Mut.
> Life Ins. Co. v. Mercy Clinics, Inc.*, 579 N.W.2d 823, 831
> (Iowa 1998).

*Royal Indem. Co.*, 786 N.W.2d at 847. What damages may have been in the
contemplation of the parties means that the court "may also look at the compensation paid
by [the defendant] for this contract." *Id.*

On the other hand,

> An exception exists to the general rule, however,
> where there is a loss "as a result of special circumstances,
> beyond the ordinary course of events, that the party in breach
> had reason to know." Restatement (Second) of Contracts
> § 351(2)(b), at 135. "If loss results other than in the ordinary
> course of events, there can be no recovery for it unless it was
> foreseeable by the party in breach because of special
> circumstances that he had reason to know when he made the
> contract." *Id.* § 351 cmt. b, at 137. We adopted this rule from
> the seminal case, *Hadley v. Baxendale*, 9 Exch. 341, 344
> (1854). *Vogan v. Hayes Appraisal Assocs., Inc.*, 588 N.W.2d
> 420, 425 (Iowa 1999).

*Royal Indem. Co.*, 786 N.W.2d at 848.

I conclude, first, that no rational trier of fact could find for Druivenga on his
damages claim, because he has failed to generate any genuine issues of material fact that
any damages resulted from Hillshire's breach that were in the contemplation of the
parties—if any breach had occurred. *Id.* at 847; *see also Torgerson*, 643 F.3d at 1042-
43 (explaining that, at summary judgment, the non-moving party must generate genuine
issues of material fact from which a rational trier of fact could find in his favor). This is
apparent by examining the nature and terms of the contract, which necessarily dictate the

damages recoverable. *Id.* Here, the nature and purpose of the contract necessarily consisted of Hillshire obtaining welding services and Druivenga providing those serves and being paid for them. *See* Defendant's Appendix at 3 (Druivenga Deposition at 121:22-122:6). Druivenga never indicated there was any term of the contract that provided for his continuing to provide services to Hillshire for any specific period of time, let alone in perpetuity. *Id.* As an independent contractor, Druivenga had the opportunity to negotiate the circumstances governing termination of his contract, as well as contract remedies to enforce any terms regarding duration of the contract. *See Johnson v. Associated Milk Producers, Inc.*, 886 N.W.2d 384, 392 (Iowa 2016). Here, Druivenga did not seek terms regarding termination and there are no terms governing the duration of his contract. Thus, Hillshire was entitled to terminate Druivenga's services at any time for any reason. To put it another way, because Hillshire had the right under the contract to terminate Druivenga's services at any time and for any reason, and did so, no breach of contract resulted in Druivenga's claimed damages. *Royal Indem. Co.*, 786 N.W.2d at 847. Here, future lost income or profits were not damages in the ordinary course of events or in the contemplation of the parties for any breach of the contract, where Druivenga was an at-will independent contractor. *Id.*

Second, Druivenga cannot rely on the exception that permits an award of damages for "a loss as the result of special circumstances, beyond the ordinary course of events, that the party in breach had reason to know." *Id.* (internal quotation marks and citations omitted). I recognize that Druivenga has identified some "special circumstances," known to Hillshire, such as the location of Druivenga's business at Hillshire's plant and evidence that Hillshire was very nearly Druivenga's only customer. These circumstances might give rise to a reasonable inference that it was foreseeable that some breach of the parties' contract by Hillshire would result in lost profits to Druivenga's business or loss of that business in its entirety. *See id.* It was also certainly foreseeable that *termination* of

Druivenga's contract could cause such losses. The insurmountable problem for awarding damages for these losses, however, remains that the contract provided for termination at any time for any reason. Consequently, the termination was not a breach of the contract. No breach of the contract caused the losses, either the termination did or the lawsuit of the insurers, for which Hillshire was not responsible, did, because the lawsuit prevented Druivenga from obtaining insurance, which he asserts was a reason he could not continue his business.

Hillshire is also entitled to summary judgment on the part of its Motion asserting that Druivenga has no recoverable damages for breach of contract.

## III. CONCLUSION

Upon the foregoing, Hillshire's May 16, 2018, Amended Motion For Summary Judgment (docket no. 26) is **granted** in its entirety, and summary judgment in favor of Hillshire shall enter terminating this case.

**IT IS SO ORDERED**.

**DATED** this 19th day of November, 2018.

_Mark W. Bennett_
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA